UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator, U.S. Environmental Protection Agency; and MIKE MARTUCCI, in his official capacity as Acting Regional Administrator, Region IX, U.S. Environmental Protection Agency,<br><br>Respondents. | PETITION FOR REVIEW |

Pursuant to section 307(b)(1) of the federal Clean Air Act, 42 U.S.C. § 7607(b)(1), and Rule 15(a) of the Federal Rules of Appellate Procedure, National Parks Conservation Association hereby petitions this Court for review of the final rule entitled "Approval of Air Quality Implementation Plans; California; Regional Haze State Implementation Plan for the Second Implementation Period." The final rule was promulgated by Respondents and/or their predecessors and published in the *Federal Register* on September 5, 2025, at 90 Fed. Reg. 42818 (Attachment A).

Respectfully submitted this 3rd day of November, 2025.

s/ Colin C. O'Brien

COLIN C. O'BRIEN, Cal. Bar No. 309413
cobrien@earthjustice.org
TYLER SZETO, Cal. Bar No. 350624
tszeto@earthjustice.org
Earthjustice
1 Sansome Street, Suite 1700
San Francisco, CA 94104
(415) 217-2000

*Counsel for Petitioner National Parks Conservation Association*

## CERTIFICATE OF SERVICE FOR ELECTRONIC FILING

I hereby certify that I electronically filed the **Petition for Review** on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system. I certify that I caused to be served the foregoing documents on this date by Certified Mail to the following unregistered case participants:

Lee Zeldin, Administrator
U.S. Environmental Protection Agency
Office of the Administrator
Mail Code 1101A
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Mike Martucci
Acting Regional Administrator, Region IX
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105

Sean Donahue, General Counsel
U.S. Environmental Protection Agency
Office of General Counsel
Mail Code 2310A
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Pamela Bondi
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Craig H. Missakian
United States Attorney for the Northern District of California
c/o Civil Process Clerk
United States Attorney's Office for the Northern District of California
450 Golden Gate Avenue
P.O. Box 36055
San Francisco, CA 94102

Adam R.F. Gustafson
Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division
Law and Policy Section
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

//

//

//

I certify under penalty of perjury that the foregoing is true and correct.

Executed on November 3, 2025 in Tiburon, California.

s/ Colin C. O'Brien
Colin C. O'Brien

# Attachment A

Dated: August 29, 2025.

**R.L. Preston,**

*Captain, U.S. Coast Guard, Captain of the Port Sector Ohio Valley.*

[FR Doc. 2025–17090 Filed 9–4–25; 8:45 am]

**BILLING CODE 9110–04–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 52

**[EPA–R09–OAR–2025–0203; FRL–12755–02–R9]**

### Approval of Air Quality Implementation Plans; California; Regional Haze State Implementation Plan for the Second Implementation Period

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is approving the regional haze state implementation plan (SIP) revision submitted by California on August 9, 2022 (hereinafter the ''2022 California Regional Haze Plan'' or ''the Plan''), under the Clean Air Act (CAA) and the EPA's Regional Haze Rule (RHR) for the program's second implementation period. The Plan addresses the requirement that states must periodically revise their long-term strategies for making reasonable progress towards the national goal of preventing any future, and remedying any existing, anthropogenic impairment of visibility, including regional haze, in mandatory Class I Federal areas. The Plan also addresses other applicable requirements for the second implementation period of the regional haze program. The EPA is taking this action pursuant to CAA sections 110 and 169A.

**DATES:** This final rule is effective on October 6, 2025.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–R09–OAR–2025–0203. All documents in the docket are listed on the *www.regulations.gov* website. Although listed in the index, some information is not publicly available, *e.g.,* confidential business information (CBI) or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available through *www.regulations.gov,* or please contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section for additional availability information.

**FOR FURTHER INFORMATION CONTACT:** Emily Millar, Geographic Strategies and Modeling Section (ARD–2–2), Planning & Analysis Branch, EPA Region IX, by email at *millar.emily@epa.gov* or phone at (213) 244–1882.

**SUPPLEMENTARY INFORMATION:** Throughout this document, ''we,'' ''us,'' and ''our'' refer to the EPA.

**Table of Contents**

I. Background
II. Rationale for Final Action
III. Public Comments and EPA Responses
IV. Final Action
V. Statutory and Executive Order Reviews

## I. Background

On August 9, 2022, the California Air Resources Board (CARB) submitted the 2022 California Regional Haze Plan to address the requirements of the CAA's regional haze program pursuant to CAA sections 169A and 169B and 40 CFR 51.308. On December 19, 2024, the EPA proposed to approve the elements of the Plan related to requirements contained in 40 CFR 51.308(f)(1), 40 CFR 51.308(f)(4)–(6), and 40 CFR 51.308 (g)(1)–(5) and to disapprove the elements of the Plan related to requirements contained in 40 CFR 51.308(f)(2), 40 CFR 51.308(f)(3), and 40 CFR 51.308(i)(2)–(4).[1] During that public notice-and-comment period, the EPA received six sets of comments. The full text of comments received on the December 19, 2024 proposal are available via Docket ID Number EPA–R09–OAR–2024–0459 at *www.regulations.gov.*

On June 18, 2025, the EPA withdrew the December 19, 2024 proposal and proposed full approval of the Plan.[2] The June 18, 2025 proposal provided background on the requirements of the CAA and RHR, summarized California's regional haze SIP submittal, and explained the rationale for our proposed action. That background and rationale will not be restated in full here.

## II. Rationale for Final Action

In this final action, the EPA is affirming the Agency's policy that, where projected 2028 visibility conditions on the most impaired days for a Class I Federal area impacted by a state are below the uniform rate of progress (URP) and the state has considered the four statutory factors, the state will have presumptively demonstrated reasonable progress for the second planning period for that area. The policy was first articulated in a proposed action on the West Virginia regional haze SIP for the second planning period,[3] which was then finalized.[4]

All twenty-nine areas Class I areas in California and twenty-four out of the twenty-five Class I areas in neighboring states are below the adjusted URP, and the Plan demonstrated that the state took into consideration the four reasonable progress factors listed in CAA 169A(g)(1)[5] with respect to an adequate number of emissions sources. For the one remaining Class I area, Sycamore Canyon, projected 2028 visibility conditions on the most impaired days are above the adjusted URP. However, as detailed in our proposed rulemaking[6] and section IV.A.3 of the Response to Comments Document available in the docket for this action (''RTC Document''), there is uncertainty with respect to the trends in visibility impairment and whether the site will really be above the URP in 2028, due to the monitor location having been moved in 2015. In addition, there is a strong downward trend in observed sulfate and nitrates, and modeled source apportionment data from WRAP shows a strong downward trend in modeled U.S. anthropogenic contributions to Sycamore Canyon between the baseline and 2028. Furthermore, even if we assume that Sycamore Canyon will be above the URP in 2028, the available evidence indicates that this is due to local sources of coarse mass and fine soil, not pollution transported from outside of Arizona. Finally, while the EPA's policy establishes a presumption regarding areas that are projected to be *below* the URP, states whose emissions contribute to impairment in areas *above* the URP can still meet the applicable requirements of the CAA and the RHR. Indeed, the RHR specifically addresses this situation by requiring a ''robust demonstration'' that there are no additional emissions reduction measures at contributing sources that would be reasonable to include in the long-term strategy.''[7] Because California did not determine that its sources contribute to impairment in Sycamore Canyon, it did not expressly make such

---

[1] 89 FR 103737.

[2] 90 FR 25929 (June 18, 2025).

[3] 90 FR 16478 (April 18, 2025).

[4] 90 FR 29737, 29738 (July 7, 2025).

[5] The four statutory factors required to be taken into consideration in determining reasonable progress are: the costs of compliance, the time necessary for compliance, and the energy and nonair quality environmental impacts of compliance, and the remaining useful life of any existing source subject to such requirements. CAA section 169(g)(1).

[6] 90 FR 25929, 25940.

[7] 40 CFR 51.308(f)(3)(ii)(B).

a demonstration. However, as described in section IV.A.3 of the RTC Document, even if Sycamore Canyon is assumed to be above the 2028 URP, we find, consistent with 40 CFR 51.308(f)(3)(ii)(B), that there are no additional emissions reduction measures for anthropogenic sources or groups of sources in California that may reasonably be anticipated to contribute to visibility impairment in the Sycamore Canyon that would be reasonable to include in California's own long-term strategy. Thus, the EPA has determined that the Plan is fully approvable under the CAA, the RHR and the Agency's new policy.

**III. Public Comments and EPA Responses**

The EPA's June 18, 2025 proposal provided a 30-day public comment period that ended on July 18, 2025. The EPA received 10 comments during the comment period: one anonymous comment; four comments from private individuals; a comment letter from the California Air Resources Board (CARB); a comment from Mid-Atlantic/Northeast Visibility Union (MANEVU); a comment from the Power Generators Air Coalition; a joint comment letter signed by Access Fund, Central California Asthma Collaborative, Central California Environmental Justice Network, Central Valley Air Quality Coalition, Clean Water Action, Coalition to Protect America's National Parks, and the National Parks Conservation Association (NPCA); and a joint comment letter signed by NPCA, Sierra Club, and Coalition to Protect America's National Parks. After reviewing the anonymous comment and the comments from the private individuals, the EPA has determined that they fail to raise issues germane to the approval of the Plan, which is based on the criteria set forth in the Act, the RHR and relevant policy documents. Therefore, we have determined that these comments do not necessitate a response, and the EPA will not provide specific response to these comments. The comments from CARB and the Power Generators Air Coalition supported the EPA's proposed action. The EPA acknowledges these supportive comments, which are included in the docket for this action. We respond to the issues raised in the three remaining comment letters received on our proposed rulemaking in this document and the associated RTC Document, which is included in the docket for this rulemaking.

We briefly address in this section: (1) whether the EPA's new policy is consistent with the CAA and RHR; (2) whether the EPA sufficiently justified its basis for the new policy; (3) whether the action is nationally applicable or based on a determination of nationwide scope and effect; (4) whether the action departs from national policy without complying with the EPA's consistency regulations at 40 CFR part 56; and (5) whether the Plan meets the applicable statutory and regulatory requirements in accordance with the new policy.

As detailed at length in the RTC Document section III.A, the EPA's new policy is consistent with the CAA. Pursuant to CAA 169A(a)(4), Congress explicitly delegated to the EPA the authority to promulgate regulations regarding reasonable progress towards meeting the national goal. As some comments note, to determine the measures necessary to make reasonable progress towards the national visibility goal under 169A(a)(1), Congress mandated ''tak[ing] into consideration the cost of compliance, the time necessary for compliance, and the energy and nonair quality environmental impacts of compliance, and the remaining useful life of any existing source subject to such requirement.'' [8]

The EPA emphasizes that just because a Class I area is below the URP does not mean that a state is relieved of its obligations under the CAA and the RHR to make reasonable progress. In other words, the URP is not a ''safe harbor,'' as that phrase has sometimes been used, because the EPA still must review a state's determination whether additional control measures are necessary to make reasonable progress, determine whether the state submitted those measures for incorporation into the SIP, and evaluate whether the measures are consistent with other provisions in the CAA .

As discussed in the West Virginia final action,[9] the EPA's change in policy is consistent with *FCC* v. *Fox Television,* 556 U.S 502 (2009). Under *FCC* v. *Fox,* an agency's change in policy is permissible if the agency acknowledges the change, believes it to be better, and ''show[s] that there are good reasons for the new policy.'' [10] In section V of our proposal for this rulemaking, we stated our reasons for implementing this new policy.[11] In sum, the EPA's proposal sufficiently justifies the change in policy under *FCC* v. *Fox.*

The decision in *FCC* v. *Fox* turned primarily on whether the FCC's change in policy would lead to the FCC ''arbitrarily punishing parties without notice of the potential consequences of their action.'' [12] As we explained in the proposal, the changed policy is prospective, which addresses the primary concern in *FCC* v. *Fox.* Additionally, the new policy ''aligns with the purpose of the statute and RHR, which is achieving 'reasonable' progress, not maximal progress, toward Congress' natural visibility goal.'' [13] Furthermore, we note that the legislative history of CAA section 169A is consistent with our change in policy. The reconciliation report for the 1977 CAA amendments indicates that the term ''maximum feasible progress'' in section 169A was changed to ''reasonable progress'' in the final version of the legislation passed by both chambers.[14]

As discussed in the West Virginia final action [15] and the RTC document for this action in response III.C.1, the EPA's Regional Consistency regulations at 40 CFR part 56, and in particular 40 CFR 56.5(b), are not relevant to this action. 40 CFR 56.5(b) requires that a ''responsible official in a Regional office shall seek concurrence from the appropriate EPA Headquarters office on any interpretation of the Act, or rule, regulation, or program directive when such interpretation may result in application of the act or rule, regulation, or program directive that *is inconsistent* with Agency policy.'' (emphasis added). As we expressly indicated in the proposal, the approval is *consistent* with the change in agency policy, first announced in *Air Plan Approval; West Virginia; Regional Haze State Implementation Plan for the Second Implementation Period.* Therefore, there is no obligation under the plain language of the EPA's Regional Consistency regulations for anyone in the region to seek concurrence from EPA Headquarters to take action consistent with EPA policy. The lack of relevance of these regulations to this action accounts for the lack of materials related to compliance with the Regional Consistency process in the docket for this rulemaking.

This action is ''locally or regionally applicable'' under CAA section 307(b)(1) because it applies only to a SIP submission from a single state, California.[16] To determine whether an

[8] CAA 169A(g)(1).

[9] 90 FR 29737, 29738 (July 7, 2025).

[10] 556 U.S. 502, 515.

[11] 90 FR 25929, 25933–25934.

[12] 556 U.S. at 517.

[13] 90 FR at 16483.

[14] *See* Legislative History of the Clean Air Act Amendments of 1977 Public Law 95–95 (1977), *H.R. Rep. No. 95–564,* at 535.

[15] 90 FR 29737, 29740 (July 7, 2025).

[16] *See Oklahoma* v. *EPA,* 605 U.S. __, __-__ (2025) (slip op., at 8) (a SIP is ''a state-specific plan'' and ''the CAA recognizes this limited scope in enumerating a SIP approval as a locally or

Continued

action is ''nationally applicable'' or ''locally or regionally applicable,'' ''court[s] need look only to the face of the agency action, not its practical effects. . . .''.[17] As discussed in the West Virginia final action [18] and the RTC Document for this action in the response III.C.4, comments that claim that the EPA ''must'' publish a finding that this action is ''based on a determination of nationwide scope [or] effect'' are also unsupported and incorrect. The Supreme Court has recognized that ''[b]ecause the 'nationwide scope or effect' exception can apply only when 'EPA so finds and publishes' that it does, EPA can decide whether the exception is even potentially relevant.'' [19] As the D.C. Circuit has also stated, the ''EPA's decision whether to make and publish a finding of nationwide scope or effect is committed to the agency's discretion and thus is unreviewable.'' [20] The Administrator has not made and published a finding that this action is based on a determination of nationwide scope or effect. Accordingly, any petition for review of this action must be filed in the United States Court of Appeals for the appropriate regional circuit.

Finally, as also detailed in section IV.A of the RTC Document, the Plan meets the applicable statutory and regulatory requirements. As required by the statute, California took into consideration the four statutory factors in CAA section 169A(g)(1) and determined that no additional controls for stationary sources were necessary to make reasonable progress. California therefore concluded that it was not necessary to incorporate any new emissions limitations, schedules of compliance, or other measures for stationary sources into its SIP. Thus, California did not ignore the results of its consideration of the four statutory factors. Rather, consistent with the CAA, RHR, and EPA's new policy, the state's final decisions as to the measures necessary to make reasonable progress in the second planning period are reasonable.

In addition, the RHR requires states to submit a long-term strategy that addresses regional haze visibility impairment for each mandatory Class I Federal area within the State and for each mandatory Class I Federal area located outside the State that may be affected by emissions from the State,[21] and the statute refers to ''a State the emissions from which may reasonably be anticipated to cause or contribute to any impairment of visibility in any such area.'' [22] However, there is no specific statutory or regulatory requirement to identify the precise set of Class I areas that are affected by emissions from California, and there is no requirement to establish a source contribution threshold in identifying those areas. In this case, CARB appropriately identified affected out-of-state Class I areas, as we explain in section IV.A.4 of the RTC document. The EPA believes CARB has reasonably documented its out-of-state Class I area contributions, and that, with one possible exception discussed in section II of this document and in the RTC at response section IV.A.3, emissions from California do not impact any Class I area whose 2028 RPG for the most impaired days is above the URP.

In conclusion, as discussed in more detail in the responses at section IV.B.8 of the RTC Document, California took into consideration the four statutory factors in CAA section 169A(g)(1) and selected four mobile source measures as necessary for reasonable progress.[23] Consistent with an approach used in many of its attainment plans, which has been upheld by the Ninth Circuit,[24] CARB did not adopt and submit the specific identified measures, but instead provided a ''commitment to achieve aggregate emissions reductions of 40 tpd of $NO_X$ emissions Statewide.'' [25] Therefore, while some of these measures were subsequently invalidated, this does not necessitate a disapproval of any portion of the Plan.

The full text of comments received is included in the publicly posted docket associated with this action at *www.regulations.gov.* The RTC Document, which is also included in the docket associated with this action, provides detailed responses to all significant comments received. The RTC Document is organized by topic. Therefore, if additional information is desired concerning how the EPA addressed a particular comment, the reader should refer to the appropriate section in the RTC Document.

## IV. Final Action

For the reasons set forth in the June 18, 2025 proposal, the RTC Document, and in this final rule, the EPA is approving the 2022 California Regional Haze Plan as satisfying the regional haze requirements for the second planning period contained in 40 CFR 51.308(f), (g), and (i).

## V. Statutory and Executive Order Reviews

Under the CAA, the Administrator is required to approve a SIP submission that complies with the provisions of the Act and applicable federal regulations.[26] Thus, in reviewing SIP submissions, the EPA's role is to approve state choices, provided that they meet the criteria of the Act. Accordingly, this action merely approves state law as meeting federal requirements and does not impose additional requirements beyond those imposed by state law. For that reason, this action:

- Is not a significant regulatory action subject to review by the Office of Management and Budget under Executive Orders 12866 (58 FR 51735, October 4, 1993);
- Is not subject to Executive Order 14192 (90 FR 9065, February 6, 2025) because SIP actions are exempt from review under Executive Order 12866;
- Does not impose an information collection burden under the provisions of the Paperwork Reduction Act (44 U.S.C. 3501 *et seq.*);
- Is certified as not having a significant economic impact on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 *et seq.*);
- Does not contain any unfunded mandate or significantly or uniquely affect small governments, as described in the Unfunded Mandates Reform Act of 1995 (Pub. L. 104–4);
- Does not have federalism implications as specified in Executive

regionally applicable action''); *see also, Am. Rd. & Transp. Builders Ass'n,* 705 F.3d 453, 455 (D.C. Cir. 2013) (describing EPA action to approve a single SIP under CAA section 110 as the ''[p]rototypical'' locally or regionally applicable action).

[17] *EPA* v. *Calumet Shreveport Refining, L.L.C.,* 605 U.S. __ (2025) (slip op. at 12) (''[W]e determine an action's range of applicability by 'look[ing] only to the face of the [action], rather than to its practical effects.' '') (quoting *Am. Rd. & Transp. Builders Ass'n,* 705 F.3d at 456) and *Oklahoma,* 605 U.S. __, __-__ (2025) (slip op. at 9) (basis for EPA action is not relevant to determining its applicability); *see also Sierra Club* v. *EPA,* 926 F.3d 844, 849 (D.C. Cir. 2019) and *RMS of Georgia, LLC* v. *EPA,* 64 F.4th 1368, 1372 (11th Cir. 2023) (''our sister circuits have established a consensus that we should begin our analysis by analyzing the nature of the EPA's action, not the specifics of the petitioner's grievance'').

[18] 90 FR 29737, 29740 (July 7, 2025).

[19] *Calumet Shreveport Refining, L.L.C.,* 605 U.S. (slip op. at 16), citing *Sierra Club* v. *EPA,* 47 F.4th 738, 746 (D.C. Cir. 2022).

[20] *Sierra Club* v. *EPA,* 47 F.4th at 745; *see also Texas* v. *EPA,* 983 F.3d 826, 835 (5th Cir. 2020) (''when a locally applicable action is based on a determination of nationwide scope or effect, the EPA has discretion to select the venue for judicial review'').

[21] 40 CFR 51.308(f)(2).

[22] CAA section 169A(b)(2).

[23] Plan, p. 116.

[24] See, *e.g., Comm. for a Better Arvin* v. *EPA,* 786 F.3d 1169, 1179 (9th Cir. 2015)).

[25] Id.

[26] 42 U.S.C. 7410(k); 40 CFR 52.02(a).

Case: 25-6957, 11/03/2025, DktEntry: 1.1, Page 9 of 9



Order 13132 (64 FR 43255, August 10, 1999);

- Is not subject to Executive Order 13045 (62 FR 19885, April 23, 1997) because it proposes to approve a state program;
- Is not a significant regulatory action subject to Executive Order 13211 (66 FR 28355, May 22, 2001); and
- Is not subject to requirements of Section 12(d) of the National Technology Transfer and Advancement Act of 1995 (15 U.S.C. 272 note) because application of those requirements would be inconsistent with the CAA.

In addition, the SIP is not approved to apply on any Indian reservation land or in any other area where the EPA or an Indian Tribe has demonstrated that a Tribe has jurisdiction. In those areas of Indian country, the rule does not have Tribal implications and will not impose substantial direct costs on Tribal governments or preempt Tribal law as specified by Executive Order 13175 (65 FR 67249, November 9, 2000).

This action is subject to the Congressional Review Act, and the EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a ''major rule'' as defined by 5 U.S.C. 804(2).

Under section 307(b)(1) of the Clean Air Act, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by November 4, 2025. Filing a petition for reconsideration by the Administrator of this final rule does not affect the finality of this action for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. (See section 307(b)(2).)

### List of Subjects in 40 CFR Part 52

Environmental protection, Air pollution control, Incorporation by reference, Nitrogen dioxide, Ozone, Particulate matter, Sulfur oxides.

Dated: August 25, 2025.

**Joshua F.W. Cook,**

*Regional Administrator, Region IX.*

For the reasons stated in the preamble, the EPA amends chapter I, title 40 of the Code of Federal Regulations as follows:

## PART 52—APPROVAL AND PROMULGATION OF IMPLEMENTATION PLANS

■ 1. The authority citation for part 52 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

### Subpart F—California

■ 2. In § 52.220a, in paragraph (e), amend table 1 by adding entries, in the following order, for ''California's Regional Haze Plan For the Second Implementation Period'' and ''California Air Resources Board Resolution 22–11, dated June 24, 2022'' before the entry for ''California Regional Haze Plan 2014 Progress Report'' to read as follows:

**§ 52.220a Identification of plan—in part.**

* * * * *

(e) * * *

TABLE 1—GENERAL PROVISIONS OF CALIFORNIA STATE IMPLEMENTATION PLAN (SIP); INFRASTRUCTURE AND REGIONAL HAZE SIPS; MATERIALS RELATED TO THE PREVENTION OF SIGNIFICANT DETERIORATION (PSD) PROGRAM; AND COMPLIANCE SCHEDULES

| Name of SIP provision | Applicable geographic area | State submittal date | EPA approval date | Explanation |
|---|---|---|---|---|
| * * * | * | * | * | * * |
| California's Regional Haze Plan For the Second Implementation Period. | Statewide | August 9, 2022 | 9/5/2025, 90 FR [Insert **Federal Register** page where the document begins]. | Adopted by California Air Resources Board on June 24, 2022. |
| California Air Resources Board Resolution 22–11, dated June 24, 2022. | Statewide | August 9, 2022 | 9/5/2025, 90 FR [Insert **Federal Register** page where the document begins]. | Resolution approving ''California's Regional Haze Plan For the Second Implementation Period''. |
| * * * | * | * | * | * * |

* * * * *

■ 3. Amend § 52.281 by adding paragraph (h) to read as follows:

**§ 52.281 Visibility protection**

* * * * *

(h) *Approval.* On August 9, 2022, the California Air Resources Board submitted ''California's Regional Haze Plan For the Second Implementation Period'' (''Plan''). The Plan meets the requirements of Clean Air Act sections 169A and 169B and the Regional Haze Rule in 40 CFR 51.308 for the second implementation period.

[FR Doc. 2025–17045 Filed 9–4–25; 8:45 am]

BILLING CODE 6560–50–P

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 52

[EPA–R10–OAR–2024–0545; FRL–11879–02–R10]

## Air Plan Approval; ID; Regional Haze Plan for the Second Implementation Period

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is approving the Idaho regional haze State Implementation Plan (SIP) revision submitted on August 5, 2022, supplemented on September 27, 2024, and clarified on August 12, 2025, as satisfying applicable requirements under the Clean Air Act and the EPA's Regional Haze Rule (RHR) for the program's second implementation period. The Idaho SIP revision addressed the requirement to make reasonable progress toward the national goal of preventing any future, and remedying any existing, anthropogenic impairment of visibility in certain national parks and wilderness areas.

**DATES:** This final rule is effective October 6, 2025.